IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WALTER MIKULAN, | ) | |
| | ) | Civil Action No. 15-1007 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| ALLEGHENY COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER ON MOTIONS *IN LIMINE*

**Cynthia Reed Eddy, United States Magistrate Judge**

## I.  OPINION

This is an action brought by Plaintiff Walker Mikulan under the Family and Medical Leave Act, 29 U.S.C. § 22601 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*  Trial is set to begin in this matter on June 5, 2017 and there are a total of twelve motions *in limine* pending before the Court.  The Court will address the motions *seriatim*.

### A.  BACKGROUND

As the facts of the case are well known to the parties, it is unnecessary to repeat them in detail here.  Thus, the Court will state only the facts that are needed to put the following rulings in the appropriate context.

Mikulan was employed by Allegheny County from 1984 until August 2013, working at the Allegheny County Jail for that whole time.  He started as a corrections officer and eventually became a Major, which is the third highest rank at the jail, only below the Deputy Warden and the Warden.  In October 2012, Orlando Harper became the Warden of the jail.  According to

Mikulan, Warden Harper immediately began harassing Mikulan and another Major, Ronald Pofi, both of whom were over the age of 55. Mikulan contends that Warden Harper viewed FMLA leave negatively, allegedly stating on one occasion that the Jail needed to "combat FMLA," and that Harper targeted Mikulan because of Mikulan's use of intermittent FMLA.

Beginning in late 2012, Deputy Warden William Emerick issued Mikulan three disciplinary actions. First, in December 2012, Emerick gave Mikulan a "counseling session" for Mikulan's alleged failure to ensure that jail staff completed a "roll call book." Second, in February 2013, the day that Mikulan returned from a month-long FMLA leave, Mikulan was issued a warning for his alleged "failure to properly monitor Overtime Justification Sheets." Third, on July 29, 2013, Mikulan was issued a warning for allegedly not timely turning in "Property Accountability Sheets." According to Mikulan, these three disciplinary actions were baseless and initiated at the direction of Warden Harper.

Warden Harper terminated Mikulan's employment on August 13, 2013. At the time of the termination, Warden Harper did not provide a reason for the termination. But Warden Harper testified extensively about his decision to terminate Mikulan in his deposition:

> Q: Were those two sections in fact the basis for your decision to terminate Major Mikulan?
>
> A: My decision to terminate Major Mikulan was the three insubordinate incidents that he had that has been noted in his disciplinary file.
>
> ***
>
> Q: All of the information that you are aware of that relates to those three incidents that were the bases for Major Mikulan's termination is contained within his disciplinary file; is that correct?
>
> A: Yes.
>
> ***

Q:      Was your decision to terminate Walter Mikulan based on anything other than the documentation that is found in his disciplinary file?

A:      Absolutely not.

Harper Dep. at 94-95, 103.

Warden Harper was questioned about an answer to an interrogatory indicating that

Mikulan's "lack of support" for Warden Harper was identified as the reason for termination:

Q:      Please tell me every piece of information, to the extent you haven't already told me, that would support your contention in the answer to interrogatories that Major Mikulan's quote, "lack of support for the warden was hindering the warden's ability to achieve the goals he had set for the jail."

A:      The three incidents of insubordination that's in his disciplinary file.

Q:      Again, give me every piece of information in your possession that would support the contention that Major Mikulan was "unable to supervise staff, follow instruction, failed to provide guidance and did not satisfactorily perform his duties as a major at the Allegheny County Jail."

A.:     The three incidents of insubordination in his disciplinary file.

Q:      You are not aware of any other information other than the information in the disciplinary file that would support any of the allegations made in this complaint; is that correct -- excuse me, made in this answer?

A.      Correct.

***

Q:      Have you terminated anyone other than Major Mikulan due to a perceived lack of support of your objectives?

A:      I didn't terminate Major Mikulan for lack of support for my objectives. I terminated Major Mikulan for his three insubordinate violations that took place.

Harper Dep. at 116-117, 136.

Therefore, Mikulan asserts in his motions that it would be inappropriate to allow the County to point to any evidence of Mikulan's purported "lack of support" for Warden Harper beyond what Warden Harper specifically testified about in the above excerpts. However, the County provided the following deposition testimony not offered by Mikulan, which arguably contradicts Mikulan's assertion that Harper's testimony was so limited:

Q: What was the basis for your decision not to give Mikulan a suspension of some particular number of days?

A: As I stated previously, Mr. Mikulan apparently did not agree with how I was managing the jail. He did not agree with a lot of the changes I wanted to make.

Major Mikulan was the third highest ranking official in the jail, and I can't have someone on my team that do not agree with how I manage.

I cannot have the third highest ranking official on my team be insubordinate on three different occasions. I cannot have somebody on my team that don't want to take the agency in the direction that I wanted to take the agency in.

And as a new warden, I need people on my team that want to take the agency in the direction I wanted to take the agency.

Q: On what do you base your conclusion that Major Mikulan did not want to take the agency in the direction that you wanted to take it?

A: Because of the three incidents that he was terminated for. Because of meetings that I've had. *Even employees coming up to me telling me that he don't agree with some of the things that I'm doing, and not just him, also Pofi. Everybody telling me that neither one of them were on board.*

Q: Who told you this?

A.     I can't remember right offhand, but *many people came to me and said that these two individuals were not on board with the direction I was taking the agency. They made it known.*

Harper Dep. at 106-108 (emphasis added).

After the County's response to this motion, Mikulan filed a "supplement," providing additional deposition testimony from Harper that Mikulan contends unequivocally shows that Warden Harper denied relying on Mikulan's alleged negative comments when deciding to terminate Mikulan's employment:

> Q:    What portion of 2.3(b) did he violate?
>
> A:    "All employees will render due respect to all supervisory staff and will carry out all orders and instructions given. No staff member will engage" — that statement that I just read."
>
> Q:    Carry out all orders and instructions. There's no other portion of 2.3(b) that you have any evidence to support that Major Mikulan violated, correct?
>
> A:    Like I said, I heard that Major Mikulan and Major Pofi were making derogatory comments to me — about me to other employees, but I did not discipline them for that, but if I did discipline them for that, they would have violated that portion of the code of ethics.
>
> Q:    But that was not the reason for the termination, correct?
>
> A:    That was not the reason for the termination.
>
> Q:    Just to clarify, your conclusion that his failure to carry out orders was willful is based exclusively on the information that is contained within his personnel file and not on any conversations or other information that you got from other sources; is that correct?
>
> A:    Just on the information that's in his personnel file — or his disciplinary file.

Against this backdrop, the Court will now discuss Mikulan's motions in limine.

## B. MIKULAN'S MOTIONS IN LIMINE

### 1. Mikulan's Motions In Limine Numbers 1, 3, 5 (ECF Nos. 47, 49, 51)

Because Mikulan filed the same brief with regard to these three motions, (ECF No. 52), the Court will discuss the motions together. The County has responded in opposition to all of these motions. (ECF Nos. 64, 66, 69). The common theme of the motions is that the County should be prevented from introducing any evidence whatsoever to show that it fired Mikulan for a reason other than what Warden Harper specifically testified about in his deposition. According to Mikulan, that means preventing the County from offering any evidence about Mikulan's "lack of support" for Warden Harper other than "the three incidents of insubordination in [Mikulan's] disciplinary file" because no other evidence motivated Harper's termination decision, and therefore is inadmissible under Rules 401 – 403.

The problem with this argument, however, is that, notwithstanding this deposition testimony, the County specifically contends that Warden Harper considered these purported negative comments in his termination decision. Mikulan has not offered any legal support for his position that the County can be prevented from asserting this defense based on the fact Warden Harper provided inconsistent deposition testimony. To the extent that Warden Harper's testimony at trial regarding his termination decision is inconsistent with his prior deposition testimony, Mikulan will obviously be entitled to impeach Warden Harper and can likewise argue to the jury that the inconsistency supports his theory that the decision was a pretext for discrimination. However, Mikulan has failed to demonstrate that Warden Harper's anticipated inconsistent testimony regarding the termination decision or any of the other evidence that the County seeks to introduce on this issue is not relevant or should be excluded on a motion in limine before the trial begins. On the abbreviated record before the Court, it would be

inappropriate for the Court to preclude all such evidence via pretrial motions before it is clear how the trial will progress. *See In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990) ("[W]e hold that in order to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record."); *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n. 10 (3d Cir. 1997) (motions in limine often present issues for which final decision is best reserved for a specific trial situation, especially when the evidence is challenged as irrelevant or prejudicial, because the considerations weighed by the court will likely change as the trial progresses; as such, rulings excluding evidence based on Rule 403 should rarely be made in limine). Therefore, this portion of the motion is denied, subject to renewal at trial once the record is more clearly developed.

Mikulan separately argues that the County should be precluded from offering any testimony regarding Mikulan's alleged criticisms of Warden Harper because such testimony constitutes inadmissible hearsay, as it is "based entirely on rumors and second or third-hand accounts." He supports his argument by merely citing "FRE 801-804." Despite Mikulan's unspecific argument, the Court agrees with him, to an extent. Although Mikulan alluded to the "hearsay within hearsay" rule – Rule 805 – by referencing testimony based on "second or third-hand accounts," he failed to mention it in his sweeping citation. In any event, the Court agrees with Mikulan that none of the County's witnesses other than Warden Harper should be able to testify "about rumors or second-hand statements" they heard from other County employees regarding Mikulan's alleged "negative comments about the Warden or his operation of the Jail" because such evidence is inadmissible hearsay. However, because the record is not developed before the Court and it is unclear which of the County's witnesses would even attempt to testify to these types of rumors or second-hand statements, the Court finds that it is premature to make a

definitive ruling before allowing the County to lay an appropriate foundation, which would also be subject to any relevance or Rule 403 objections. Mikulan may renew these objections during trial.

In addition, the preceding hearsay analysis is different with respect to Warden Harper because he was the decisionmaker who decided to terminate Mikulan's employment. The Court acknowledges Mikulan's argument that any testimony about the alleged negative comments is hearsay because Warden Harper testified during his deposition that they did not motivate his termination decision. However, given that it appears from the County's submissions that Warden Harper will likely testify to the contrary at trial, the Court must defer ruling on this issue until then. If Warden Harper testifies at trial that the rumors about Mikulan's negative comments motivated his termination decision (in contravention of his prior deposition testimony), it would still nevertheless be testimony offered to explain his motivation for terminating Mikulan, and, therefore, would not be inadmissible hearsay. *See Fahnestock v. Carlisle Reg'l Med. Ctr.*, 659 Fed. App'x 75, 78 (3d Cir. 2016) (evidence offered to explain employer's motivation for terminating the employment, rather than to prove the actual truth of the statements, is admissible). Therefore, whether Warden Harper's testimony about such rumors or negative comments is inadmissible hearsay will depend on the circumstances. As such, this portion of the motion is denied, subject to renewal at trial.

Next, in Mikulan's motion in limine number 3, he seeks to prevent the County from offering any evidence relating to his performance or documents contained in his disciplinary file that Warden Harper did not consider in his termination decision. He asks the Court to exclude all evidence on an 8-page chart attached to his motion.[1] He argues that such evidence is

---

[1] Mikulan filed a supplement to this motion in limine on May 30, 2017 requesting that the

irrelevant and is barred by Rule 404, offered only for the purpose to show that because he committed alleged infractions in the past it was more likely that Warden Harper's decision to terminate him based on the three disciplinary incidents were non-discriminatory. The County opposes this motion, stating that the exhibits involving his employment history and records from before Harper's arrival are being offered in support of its defenses to Mikulan's anticipated arguments regarding damages. Indeed, as discussed below, in responding to one of the County's motions in limine (number 6), Mikulan specifically asserts that he intends to offer evidence of his work history before Harper's arrival on the issue of damages. Thus, Mikulan cannot prevent the County from using this evidence for the same purpose that he intends to use it. Moreover, the Court cannot grant Mikulan's requested relief to exclude an 8-page chart of the County's exhibits in a vacuum on an all-or-nothing basis. In accordance with the pre-trial order, the Court will evaluate whether the parties' exhibits are admissible based on the parties' specific objections.

Finally, in his motion in limine number 5, Mikulan argues that since the County's position is that it fired Mikulan for disciplinary issues/insubordination, it must be prevented from offering any evidence suggesting, implying, or showing that Mikulan abused FMLA leave or was not entitled to any leave that he took. Mikulan notes that this information is clearly not relevant to the County's stated reason for terminating him. The County responds, however, that it intends to offer this evidence for a different purpose. It notes that Mikulan has made the County's alleged obsessive monitoring of FMLA leave a central issue in this case, and that Mikulan has asserted that the County and Warden Harper had a critical view of FMLA use due to a purported "abuse" of FMLA that was occurring at the jail. The County, therefore,

---

Court exclude various other exhibits proposed by the County. (ECF No. 82). The County has not had the chance to respond to this document.

anticipates that Mikulan will attempt to prove that his own FMLA use was closely monitored by Warden Harper and his staff.[2]  Because the County denies that it closely monitored Mikulan's FMLA leave or that it considered his use of FMLA leave when it decided to fire him, it states that it can rebut Mikulan's argument here by showing that Mikulan was in fact abusing FMLA at the time period he was fired, but that it did not fire him for that purpose.  The Court finds that based on this response, whether this evidence is relevant or barred by Rule 403 will depend on how the trial progresses, and, accordingly, denies this motion, subject to renewal.  *See Paoli*, 916 F.2d at 859.

## 2.  Mikulan's Motion in Limine Number 2 (ECF No. 48)

Mikulan seeks to prevent the County from arguing and/or otherwise suggesting that he failed to mitigate his damages with respect to wage loss.  Mikulan asserts that the County has not listed and/or proffered any witness testimony and/or documentary evidence in its pretrial statement "that would support, much less carry its burden of proof, that [he] failed to mitigate his damages with respect to wage loss."  Allowing the County to argue or suggest at this late date that Mikulan failed to mitigate his damages would, according to Mikulan, be prejudicial to him and confuse the jury in contravention of Rule 403, and would otherwise be inappropriate.  The County correctly responds, however, that it may potentially establish this defense at trial by

---

[2]    Both Mikulan's pretrial statement and his response to the County's motion in limine number 2 support the County's anticipation that he will make such arguments at trial.  *See* Mikulan's Pretrial Statement (ECF No. 41) at 1-2 ("Upon [Harper's] arrival, Harper immediately began harassing the two Majors (Mikulan and Ronald Pofi), both of whom were over the age of 55.  Major Mikulan became Harper's primary target because Mikulan took intermittent FMLA leave, which Harper viewed negatively based on his belief that such leave was being abused at the Jail.  Harper frequently complained to his staff about this alleged abuse: At one meeting – attended by the County Manager, Harper, and several Jail Administrators and other staff – the instruction was given to 'combat FMLA.'   Harper closely monitored the FMLA leave taken by his administrative staff."); Mikulan's Response to the County's Motion in Limine 2 ("Harper fostered a management culture at the Jail that was hostile to FMLA use (and obsessed with rooting out perceived 'abuse') and to older employees (many of whom needed FMLA leave).").

examining Mikulan and his wife and by the documentary evidence that Mikulan produced with regard to his earnings after his employment at the County.  This motion is, therefore, denied.

### 3.  Mikulan's Motion In Limine Number 4 (ECF No. 50)

Mikulan seeks to exclude all testimony, evidence, and argument disclosing the County's consultation and/or the involvement of counsel in any way in connection with the decision to terminate Mikulan and/or discussion about FMLA at the Jail because during discovery, the County asserted the attorney-client privilege and refused to disclose communications between the County Manager, HR, and/or Warden Harper and the County's attorneys on those subjects. Because the County has neither disclosed nor permitted discovery as to its communications or consultations with counsel and any legal advice it received based on its attorney-client privilege, Mikulan argues that County should not be able to offer any such evidence at trial as a basis for its decision to terminate Mikulan.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 222 n. 24 (3d Cir. 2006) ("the attorney-client privilege cannot be used as both a 'shield' and a 'sword'").

The County asserts in response that it does not intend to present any evidence or argument regarding the substance of any consultation with counsel related to the decision to terminate Mikulan and concedes that it should not be permitted to disclose information at trial that it withheld as privileged during discovery.  The County nevertheless argues that it should be allowed to generally refer to counsel's involvement in the "termination decision-making process" because that is a "full and accurate description of the process used to terminate Allegheny County employees."   The Court disagrees and finds Mikulan's position more compelling.  It would be extremely unfair to allow the County to withhold this evidence from Mikulan in discovery and then allow the County to turn around and argue that it did not

discriminate against Mikulan based on the withheld legal advice. *See Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 2006 WL 2289789, *1 (W.D. Pa. 2006). Therefore, this motion is granted.

## C. THE COUNTY'S MOTIONS IN LIMINE

### 1. The County's Motion In Limine #1 (ECF No. 55)

The County seeks to preclude Mikulan from introducing testimony of both age discrimination and FMLA retaliation at trial, arguing that those claims are incompatible and that Mikulan must elect to pursue either one or the other at trial. The County makes this argument based on *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78 (2009), which held that in ADEA disparate treatment actions, the plaintiff must show that age was the "but-for" cause of the employment action. However, as Mikulan correctly responds, Third Circuit case law, as well as the Third Circuit Model Civil Jury Instructions, belie the County's argument that the "but-for" standard articulated by *Gross* means that age must be the "sole" cause for the adverse employment action. *See Robinson v. City of Philadelphia*, 491 Fed. App'x 295, 299 (3d Cir. 2012) ("We do not require that age discrimination be the sole cause for an adverse employment decision to prevail on an age discrimination claim, and it is reversible error for a District Court to so rule.") (internal citation omitted); Third Circuit Model Civil Jury Instruction 8.1.1. & Comment (a plaintiff may satisfy the "but-for" cause standard articulated in *Gross* by proving that his/her age was "a determinative factor" in the employment decision); *see also Schilling v. Napleton's Ellwood City Chrysler, Dodge, Jeep Ram*, 2015 WL 6509436, *4 (W.D. Pa. 2015) ("This Court finds that the 'sole' and the 'but for' cause of something are very different" and a plaintiff "need not prove his age was the sole cause of his termination in order to prevail on his age discrimination claim"). Accordingly, this motion in limine is denied.

## 2. The County's Motion In Limine #2 (ECF No. 56)

The County seeks to prevent Mikulan from introducing various "me too" evidence. "Me too" evidence is "evidence of discrimination against other employees *by other supervisors*." *Mandel v. M&Q Packaging Corp.*, 703 F.3d 157 (3d Cir. 2013) (emphasis added). Mikulan correctly notes that he is not even offering "me too" evidence because the witnesses he intends to call all claim to have been similarly discriminated against by the *same supervisor*, Warden Harper. Thus, contrary to the County's argument, the witnesses' respective ranks within the jail are less significant given that they all claim they suffered the same adverse action from Warden Harper. *See Becker v. ARCO Chemical Co.*, 207 F.3d 176, 194 n. 8 (3d Cir. 2000) ("[A]s a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible ... to establish whether a defendant's employment action against an employee was motivated by invidious discrimination."). Moreover, while the Court acknowledges the County's concern about the risk of "mini-trials" from allowing Mikulan to introduce this evidence, Mikulan asserts that this evidence directly relates to Warden Harper's motive for the adverse action, and the Court cannot balance the Rule 403 factors on the limited record before it. *See U.S. Fire Ins.Co. v. Omnova Solutions, Inc.*, 2012 WL 1593119, *1 (W.D. Pa. 2012).

Further, the County's assertion that all such witness testimony is broadly barred under Rule 404(b) is incorrect. *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 521 (3d Cir. 2003) ("[O]ther acts are admissible under Rule 404(b) in the employment discrimination context for the proper purpose of establishing or negating discriminatory intent."). The County also argues that under Rule 701, the Court should prevent Mikulan from allowing his witnesses to testify about "generalized lay opinion testimony regarding [its] motivations for its actions

and/or the existence of disparate treatment, hostile work environment, and/or retaliation proposed by Mikulan and his witnesses in the form of conclusory opinions." Mikulan responds that his proffered witnesses' testimony will be "rationally based on their perceptions and observations while working and attending regular meetings at the jail" and their "opinions will be helpful to understanding their events and in determining whether Mikulan was fired for a discriminatory and/or retaliatory reason." While the Court agrees with the County that it will not be helpful to the jury for these witnesses to testify as to legal conclusions, such as whether something was "disparate treatment or a "hostile work environment," the Court also agrees with Mikulan that these witnesses may testify to their own first-hand knowledge and perceptions. The County may renew any objection during their testimony to the extent that any of it is based on legal conclusions or speculation, but in the absence of a more specific challenge, this request is denied at this time.

The County also seeks to exclude all evidence regarding age or FMLA-related statements made by non-decisionmakers, asserting that it has no connection to Mikulan's termination. Mikulan responds, however, that he will present evidence showing that "Harper fostered a management culture at the Jail that was hostile to FMLA use (and obsessed with rooting out perceived 'abuse') and to older employees (many of whom needed FMLA leave)." In this context, Mikulan correctly contends that evidence of statements by non-decisionmakers and of a discriminatory culture constitute admissible circumstantial evidence of discriminatory motive. *See Walden*, 126 F.3d at 521; *Johnson v. Federal Exp. Corp.*, 2014 WL 805995, *8 (M.D. Pa. 2014). Accordingly, the County's argument here is rejected, and this motion is denied in its entirety, subject to renewal at trial.

### 3.  The County's Motion In Limine #3 (ECF No. 57)

In this motion, the County seeks to prevent Mikulan from offering any evidence or testimony of his wife's cancer diagnosis. Mikulan listed his wife as a witness for purposes of establishing damages.  The County contends that her cancer diagnosis should be concealed from the jury because it is not relevant to any of the issues in the case and any probative value is far outweighed by its unfair prejudice.  Mikulan responds that his wife is bald because of her cancer and her condition will be obvious to the jury, so it is completely appropriate to allow her to explain this physical condition to the jury.  Mikulan asserts that under these circumstances, the County will not be prejudiced from an explanation that she has cancer, especially because cancer has caused her to appear frail and may affect her ability to testify.  Although the Court does not find the County's attempt to exclude this testimony to be improper, the Court agrees with Mikulan that his wife should not be precluded from explaining the underlying reason for her physical appearance when she testifies because it is relevant to her credibility as a witness.

Moreover, the Court's final jury instructions help cure the County's concern.  The Court will instruct the jury:

> Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion.  Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

Accordingly, this motion is denied.

### 4.  The County's Motion in Limine #4 (ECF No. 58)

The County seeks to prevent Mikulan from having one of his witnesses (Kenneth Stanton) testify that Warden Harper used the term "old jail mentality."  The County asserts that if

Warden Harper used this term in referencing the former Allegheny County Jail, it was not "age-specific" or discriminatory, and should be excluded.  Mikulan counters that he intends to have the witness testify as to Warden Harper's remarks about the "old jail mentality" because it is circumstantial evidence of the "atmosphere" and context in which he decided to terminate Plaintiff and the influences behind his actions.  *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (plaintiffs in age discrimination claims may rely on circumstantial evidence).  Although the Court is not convinced by Mikulan that this comment by Warden Harper "unambiguously relates to age," the Court agrees with him that excluding it from the jury is not warranted.  This motion is denied.

### 5.  The County's Motion in Limine #5 (ECF No. 59)

The County seeks to prevent Mikulan from presenting non-expert lay opinion testimony regarding damages that requires accounting principles and methodology.  According to the County, Rule 701 prevents Mikulan, as a lay witness, from testifying regarding the use of any accounting methodology outside of his personal knowledge.  Further, the County asserts that Mikulan should be prevented from offering evidence as to his lost pension ($32,271) and social security benefits ($211,734) because he did not provide a computation for this amount that would not require expert testimony on the subjects.

The Court of Appeals has explained: "When a lay witness has particularized knowledge by virtue of her experience, she may testify – even if the subject matter is specialized or technical – because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."  *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009).  But "lay testimony requiring future projections … [must] come from someone who has intimate and thorough knowledge … gathered from either a lengthy

tenure or a position of authority." *Id.* (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993)). In the context of employment discrimination suits, the Court of Appeals has expressly "allowed a plaintiff alleging age discrimination to testify as to his projected earnings and to reduce those earnings to present value." *Id.* (citing *Maxfield v. Sinclair Int'l*, 766 F.3d 788, 797 (3d Cir. 1985)). Thus, where an employee has significant employment history with the defendant, the plaintiff may "base his request for front pay upon his former earnings without making any projection in earnings 'for which expert testimony was required.'" *Id.* Relevant factors for a court to consider in determining whether to allow an employee to provide such testimony include the duration of employment and the employee's "knowledge of the company's salary structure, advancement opportunities, pay raises, or employment patterns." *Id.* at 81-82.

In response, Mikulan asserts that he has personal knowledge of his lost wages, income, benefits and other remuneration based on his employment history with the County, which spanned more than 29 years. More specifically, he contends that,

> In view of his personal knowledge, experience, and background, Plaintiff can testify to his lost wages, benefits and other remuneration; he can testify as to his prospective – front pay – economic loss based both upon his knowledge of past earnings, and his knowledge of how these earnings increased over time using that knowledge to project increases in his prospective earnings. He is competent to testify to the diminution in the value of his pension since he has personal knowledge of how pensions are calculated pursuant to a[n] Allegheny County Pension Board published formula for making such calculations. In addition, the parties have stipulated that liquidated damages calculations, and tax consequence adjustments**,** will be made by the court based on post-trial motion to mold the verdict, assuming a verdict in Plaintiff's favor.

With respect to the issues of front pay and the pension calculation, the Court finds this explanation sufficient for purposes of defeating the pending motion in limine, subject to renewal

at trial. In light of Mikulan's extensive work history with the County where he began as a corrections officer and eventually became a Major, the Court concludes that Mikulan has made an adequate preliminary showing that he has personal knowledge and is sufficiently familiar of the County's salary structure, pay raises, employment patterns and other information about which he seeks to testify regarding damages as to front pay and his pension calculation.

However, Mikulan's response to this motion did not mention the County's concern about his ability to calculate his projected lost social security benefits without an expert. Based on the spreadsheet attached to his pretrial statement that was prepared by an accountant, there is no question that this is a "sufficiently complex" calculation. *See Donlin*, 581 F.3d at 83 (reversing the district court for allowing the plaintiff to testify about calculations that required technical or specialized knowledge). Because the Court "must rigorously examine the reliability of a layperson's opinion by ensuring the witness possesses sufficient specialized knowledge or experience which is germane to the opinion offered," the Court cannot permit Mikulan to testify as to such "forward-looking speculation for which [he] lack[s] the necessary training." *Id.* He has not even attempted to show that he has the required technical or specialized knowledge to be able to testify as to the method of computing this complex calculation. Therefore, Mikulan cannot testify as to his projected lost social security benefits as a layperson under Rule 701.

The County also argues in this motion that Mikulan cannot recover the amount that the County paid for Mikulan's health insurance (a fringe benefit) and also recover the money that Mikulan actually expended in obtaining replacement benefits. Mikulan did not respond to this argument. Nevertheless, this Court has "calculated damages for the loss of health insurance in the termination context by determining how much the plaintiff expended in order to replace the insurance." *Bradford v. UPMC*, 2008 WL 191706, *6 (W.D. Pa. 2008); *see also DiCanio v.*

*Norfolk Southern Ry. Co.*, 2015 WL 3929703, *1 (W.D. Pa. 2015) ("Plaintiff's presentation of evidence as to her proposed damages for medical and other fringe benefits shall be limited to actual 'out-of-pocket' losses"). Therefore, the Court agrees with the County that allowing Mikulan to recover both the County's cost paid for Mikulan's health insurance and also the amount that he expended in obtaining other benefits would contravene the ADEA's damages scheme. "Limiting Plaintiff's potential recovery for medical and other benefits to actual sums spent to obtain alternative coverage conforms with the purposes of damages awards in employment discrimination cases, which is to make the aggrieved party whole."

Accordingly, this motion is granted in part and denied in part.

### 6. The County's Motion in Limine #6 (ECF No. 60)

The County seeks to prevent Plaintiff from offering evidence or testimony regarding his own and other witnesses' past performance evaluations that predate October 2012, which is when Harper became Warden of the Jail, because "[t]he attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 474 (3d Cir. 2005). The County argues that the past positive performance reviews consistently received by Mikulan and his witnesses prior to Warden Harper's arrival are neither relevant nor probative to their performance under Warden Harper.

Mikulan responds, however, that this evidence is relevant, at the very least, as to his FMLA retaliation claim because he intends to pursue this claim under a "mixed-motive" theory, which is governed by the more relaxed "negative factor" standard. *See Egan v. Del. River Port Auth.*, 851 F.3d 263, 272 (3d Cir. 2017); *Lichtenstein v. UPMC*, 691 F.3d 294, 303 (3d Cir. 2012) (observing that the pretext theory is "more taxing" than the mixed-motive theory). Thus,

he asserts that evidence of his work history could be relevant to his FMLA retaliation claim.[3]

Moreover, Mikulan notes that his work history is relevant for calculating damages. *See Maxfield*, 766 F.3d at 797. Based on Mikulan's response, the Court concludes that the County's objections with regard to Mikulan testifying about work history are "best reserved for a specific trial situation." *See Walden*, 126 F.3d. at 518 n. 10. Further, in accordance with Mikulan's motion in limine number 3 above, the County's attempt to exclude all such evidence is overbroad and the Court will evaluate whether the parties' documents are admissible based on the County's specific objections. This motion is denied, subject to renewal at trial.

### 7. The County's Motion in Limine #7 (ECF No. 60)

The County seeks to prevent Mikulan from calling Douglas Maust as a witness because Maust was not identified in Mikulan's initial disclosures or answers to discovery requests, and Mikulan never supplemented his initial disclosures to include Maust. Federal Rule of Civil Procedure 37(c)(1) states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at trial, unless the failure was substantially justified or is harmless." The

---

[3] The Court notes that Mikulan will be entitled to a mixed-motive jury instruction only if he presents sufficient "evidence from which a reasonable jury could conclude that [the County] *had legitimate and illegitimate* reasons for its employment decision and that [Mikulan's] use of FMLA leave was a negative factor in its employment decision." *Egan*, 851 F.3d at 275 (emphasis added). At this stage, it remains unclear whether Mikulan will be entitled to this jury instruction, given that his pretrial statement and arguments relating to the motions in limine appear to assert that the County had no legitimate reason whatsoever for its termination decision. For example, Mikulan contends in his pretrial statement that each of the three incidents in his disciplinary file on which Warden Harper purportedly decided to terminate him were "frivolous" and "baseless," and that Harper's articulated reason for termination was "false, untrue, and pretextual." (ECF No. 41 at 2-3). Nevertheless, it is premature for the Court to make a definitive ruling on this issue because Mikulan is permitted to present his FMLA retaliation claim under both a mixed-motive theory and a pretext theory at trial, "provided that, prior to instructing the jury, the [Court] decides whether one or both theories applies." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995)).

County notes that Mikulan's initial disclosures and answers to its interrogatory listed more than 20 individuals who Mikulan believed to have information relating to his claim but did not identify Maust. The County argues, therefore, that it cannot be expected to predict which other unidentified individuals Mikulan will assert at trial.

Mikulan responds that the County's position is without merit because it questioned him at length during his deposition about Maust, including about the information that Maust had that was relevant to Mikulan's claims, and that under Rule 26(e)(1)(A), he was not required to supplement his initial disclosures because the information about Maust had "otherwise been made known" during the deposition. After reviewing the deposition testimony of Mikulan with regard to Maust, the Court agrees with Mikulan that even if he was required to supplement his initial disclosures to include Maust under Rule 26(e), any such error was substantially justified or harmless. *See Tolerico v. Home Depot*, 205 F.R.D. 169, 175-77 (M.D. Pa. 2002) (explaining the difference between substantially justified and harmless). Mikulan testified in his deposition that Maust informed Mikulan that Warden Harper stated to several captains in a meeting that Mikulan and Pofi "would be gone by year end." This deposition excerpt also demonstrates that other County employees who attended that same meeting denied that Harper ever made those comments. Thus, in light of this significant disputed fact, the County was certainly on notice that Mikulan would likely call Maust as a favorable witness. As such, this motion is denied.

## II. ORDER

AND NOW, this 31st day of May, 2017, in accordance with the foregoing Opinion, it is hereby ORDERED as follows:

− Plaintiff's Motion in Limine Number 1 to exclude "any evidence to prove his alleged 'lack of support' of Warden Harper beyond the evidence in Plaintiff's disciplinary file as to which Warden Harper was the [sole basis] for Plaintiff's termination" (ECF No. 47) is **DENIED**, **subject to renewal at trial.**

– Plaintiff's Motion in Limine Number 2 to preclude Defendant "from arguing, and/or offering evidence, documentary or testimonial, that Plaintiff failed to mitigate damages with respect to wage loss" (ECF No. 48) is **DENIED.**

– Plaintiff's Motion in Limine Number 3 to preclude Defendant "from offering the exhibits identified in the chart attached to Plaintiff's Motion in limine 3, or eliciting the proffered testimony from the witnesses identified in Attachment 2 to Plaintiff's Motion in limine 3" (ECF No. 49) is **DENIED**, **subject to renewal at trial.**

– Plaintiff's Motion in Limine Number 4 to preclude Defendant "from offering or eliciting testimony, evidence and argument disclosing Defendant's consultation with counsel and/or the involvement of counsel in any way in the connection with the decision to terminate Plaintiff's termination and/or discussions about FMLA at the jail" (ECF No. 50) is **GRANTED.**

– Plaintiff's Motion in Limine Number 5 to exclude "any argument, evidence, testimony, and documents to suggest, imply or prove that Plaintiff abused or was not entitled to the FMLA leave he took" (ECF No. 51) is **DENIED, subject to renewal at trial.**

– Defendant's Motion in Limine Number 1 to exclude the introduction of testimony and evidence of both age discrimination and FMLA retaliation (ECF No. 55) is **DENIED**.

– Defendant's Motion in Limine Number 2 to exclude "me too" evidence of other employees' allegations (ECF No. 56) is **DENIED, subject to renewal at trial.**

– Defendant's Motion in Limine Number 3 to exclude the introduction of testimony and evidence of Plaintiff's wife's medical condition (ECF No. 57) is **DENIED.**

– Defendant's Motion in Limine Number 4 to preclude Plaintiff "from introducing the alleged use of the phrase 'old jail mentality' by Warden Harper as evidence of age bias" (ECF No. 58) is **DENIED**.

– Defendant's Motion in Limine Number 5 to exclude to exclude non-expert lay opinion testimony regarding damages (ECF No. 59) is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** to the extent that Mikulan cannot testify as to his projected lost social security benefits, and his presentation of evidence as to his proposed damages for medical and other fringe benefits shall be limited to actual out-of-pocket losses. All other aspects of the motion are **DENIED, subject to renewal at trial.**

– Defendant's Motion in Limine Number 6 to exclude past performance evaluations (ECF No. 60) is **DENIED, subject to renewal at trial.**

– Defendant's Motion in Limine Number 7 to exclude testimony of Douglas Maust (ECF No. 61) is **DENIED.**

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered users of CM-ECF